UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLEGHENY INTERNATIONAL
SERVICES (ME), LLC,

    Plaintiff,

v.                           Case No. 8:18-cv-1568-T-33SPF

BRIAN FLYNN,

    Defendant.
_____/

**ORDER**

Before this Court is Plaintiff Allegheny International Services (ME), LLC ("AISME")'s Motion to Dismiss (Doc. # 43), filed on November 19, 2018. Defendant Brian Flynn responded in opposition on December 3, 2018. (Doc. # 44). For the reasons that follow, the Motion is granted.

**I. Background**

On June 29, 2018, AISME, which offers management services to health care entities, initiated this action against Flynn, a former employee of AISME, alleging breach of contract, conversion, and tortious interference with a contract. (Doc. # 1; Doc. # 38 at 1-2). The dispute arises out of the parties' prior employment relationship, in which Flynn was hired by AISME to serve as the Chief Executive

1

Officer of a new hospital in Kuwait. (Doc. # 38 at 2-3; Doc. # 40 at 7).

On October 29, 2018, Flynn filed his Answer, Third Party Complaint, Affirmative Defenses, and Counterclaim. (Doc. # 40). According to the Counterclaim, "AISME hired Flynn to serve as [the] Kuwait Hospital's CEO" on March 24, 2017. (Id. at 8 n.1, 9). "During the interview process and throughout Flynn's time at [the] Kuwait Hospital, AISME affirmatively represented that the Kuwait Hospital project had the financial and professional backing of [Allegheny Health Network ("AHN")] and [Allegheny General Hospital ("AGH")]." (Id. at ¶ 115).

These representations included: "(1) direct statements by its representatives Amr Elrifai and Mary Pat Stroia that AHN and AGH were involved in the project; (2) interviewing Flynn on AHN's campus and introducing him to various representatives from AHN and AGH during the process; (3) using AHN and AGH's branding extensively on its website and social media accounts; (4) using ahn.org and wpahs.org e-mail addresses, both of which are affiliated with AHN and AGH;(5) paying Flynn with checks bearing 'Allegheny General Hospital'; and (6) sending Flynn . . . policies and procedures from AHN for use at [the] Kuwait Hospital." (Id. at ¶ 116)

2

(citations omitted). The Counterclaim includes over fifty pages of exhibits that display AISME's website, social media accounts, forwarded emails, and checks. "Flynn justifiably and detrimentally relied" on these representations "by accepting the Kuwait Hospital job, uprooting his family's lives, and moving to Kuwait." (Id. at ¶ 120).

However, Flynn alleges that "AHN and AGH had not agreed to fund or take part in the Kuwait Hospital project." (Id. at ¶ 118). Indeed, "AISME misrepresented its affiliation with [AHN and AGH]" so "that Flynn would accept the Kuwait Hospital CEO position." (Id. at ¶¶ 113, 119). In short, AISME "defrauded Flynn by tricking him into going to Kuwait on false pretenses." (Id. at ¶ 112). Accordingly, the Counterclaim alleges AISME is liable for fraud.

On November 19, 2018, AISME filed the instant Motion to Dismiss, arguing the Counterclaim fails to sufficiently allege fraud under Federal Rule of Civil Procedure 9(b). (Doc. # 43). Flynn filed his response on December 3, 2018. (Doc. # 44). The Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the

3

counterclaim plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the counterclaim plaintiff with all reasonable inferences from the allegations in the counterclaim. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a [counterclaim] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the counterclaim, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).

### III. **Analysis**

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting the fraud," although "[m]alice, intent, knowledge, and other conditions

4

of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading standard of Rule 9(b) is satisfied if the claim sets forth: "(1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the [defendant] gain[ed] by the alleged fraud." W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008). In other words, "Rule 9(b) demands that [parties] must actually plead the who, what, when, where, and how of specific misrepresentations that led them astray." Lawrie v. Ginn Dev. Co., LLC, 656 F. App'x 464, 474 (11th Cir. 2016). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).

In this case, Flynn's Counterclaim fails to meet the strictures of Rule 9. First, Flynn fails to identify the precise statements, documents, or misrepresentations made. True, Flynn's Counterclaim may have "included dozens of pages of exhibits demonstrating that [AISME] was representing itself to everybody (including Flynn) as the branch of AHN tasked with bringing AHN's services to the world." (Doc. # 40

5

at 10). However, Flynn fails to quote or paraphrase a single affirmative representation by AISME that AHN and AGH were to participate in the Kuwait hospital project. Not one page of the over fifty pages submitted as exhibits mentions the Kuwait hospital. In fact, the checks attached as exhibits suggest that AGH was financially backing the Kuwait hospital because Flynn was apparently being paid by AGH while he worked there.

The only factual allegation Flynn offers to support AISME's purported fraud is that Elrifai and Stroia made "direct statements . . . that AHN and AGH were involved in the project." (Doc. # 40 at ¶ 116). But allegations of "direct statements" without providing any substance of the statements is insufficient for Rule 9(b) pleading. See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG, 341 F. App'x 487, 494 (11th Cir. 2009) (affirming that plaintiff's allegations that defendants "represented" information "knowing full well" the information was false was insufficient to meet Rule 9(b)'s requirements).

The Counterclaim identifies with particularity AISME's representations of its general affiliation with AHN and AGH. But the Counterclaim fails to identify AISME's representations of AHN and AGH's affiliation with the Kuwait project. Flynn's averment that AISME's representations of its

6

affiliation with AHN and AGH were fraudulent is nothing more than mere conjecture. Johns Manville, Inc., 287 F. App'x at 87 ("Rule 9(b) requires [parties] to offer more than mere conjecture . . . .").

Furthermore, Flynn imprecisely alleges the particular time and place of AISME's representations. For example, although Flynn alleges he was defrauded into moving to Kuwait, he also states some of AISME's representations took place throughout his time in Kuwait. (Doc. # 40 at ¶ 115). Indeed, the checks attached as exhibits to support Flynn's allegations are dated November 14, 2017, (Doc. # 40-4), which is after "Flynn accepted his employment [o]n March 24, 2017," (Doc. # 40 at 8 n.1). It is not clear how these representations could have tricked Flynn into moving to Kuwait if he was already there. Indeed, such imprecision also establishes that Flynn has failed to sufficiently plead the manner in which AISME's representations misled him.

Flynn avers that AISME's fraud was "an ongoing matter," so "it would be absurd to require [him] to identify, for example, every individual day that AISME did not clarify the situation with AHN and AGH." (Doc. # 44 at 7). However, the Counterclaim alleges Flynn "justifiably and detrimentally relied" on AISME's representations "by accepting the Kuwait

7

Hospital job, uprooting his family's lives, and moving to Kuwait." (Doc. # 40 at ¶ 120). Therefore, according to the Counterclaim, the fraud was "ongoing" to the extent it lasted the length of the hiring process and before Flynn moved to Kuwait. And since AISME's representatives made "direct statements" to Flynn, it is not absurd to require him to identify at least one statement regarding the Kuwait project's funding and backing during the hiring process.

Additionally, Flynn fails to allege with specificity what AISME gained by the alleged fraud. While the Counterclaim alleges that AISME made misrepresentations so Flynn would accept the CEO position and that Flynn suffered damages, nowhere does it explicitly state what AISME obtained by tricking Flynn. The implied allegation that Flynn's acceptance of the position was what AISME gained is insufficient.

Flynn spends a significant portion of his response arguing that the Counterclaim is supported by Rule 9(b)'s policy rationales. (Doc. # 44 at 9-13). An academic debate on Rule 9(b)'s "subjective" nature and the Advisory Committee's failure to state the purpose of the fraud pleading rule, (Id. at 9), is not necessary to analyze the Counterclaim. The policy goals of Rule 9(b) are simple: "alerting defendants to

the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). The only thing the Counterclaim alerts AISME to is that it has expressly and implicitly, both publicly and privately, represented itself as affiliated with AHN and AGH. The Counterclaim's imprecision does not satisfy Rule 9(b)'s policy goals.

In sum, Flynn has failed to satisfy the pleading requirements of Rule 9(b). Consequently, the Motion to Dismiss is granted, and the Counterclaim is dismissed without prejudice. Flynn is authorized to file an amended counterclaim by December 17, 2018.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Allegheny International Services (ME), LLC's Motion to Dismiss (Doc. # 43) is **GRANTED.**

(2) The Counterclaim (Doc. # 40) is **DISMISSED** without prejudice.

(3) Defendant Brian Flynn is authorized to file an amended counterclaim by **December 17, 2018.**

9

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>8th</u> day of December, 2018.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE