UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLEGHENY INTERNATIONAL
SERVICES (ME), LLC,

    Plaintiff,

v.                     Case No. 8:18-cv-1568-T-33SPF

BRIAN FLYNN,

    Defendant.
_____/

<u>**ORDER**</u>

Before this Court is Plaintiff Allegheny International Services (ME), LLC's ("International Services") Motion to Dismiss Flynn's Counterclaim (Doc. # 56), filed on December 28, 2018. Defendant Brian Flynn responded in opposition on January 11, 2019. (Doc. # 59). For the reasons that follow, the motion is denied.

**I.   Background**

Flynn's amended counterclaim alleges International Services misrepresented its affiliation with Allegheny Health Network ("Health Network") and Allegheny General Hospital ("General Hospital") – two prominent healthcare providers – so that Flynn, who has thirty years of experience managing hospitals, would serve as the CEO of International Services' new hospital in Kuwait. (Doc. # 50 at 24-26). International

1

Services' alleged misrepresentations not only induced Flynn to accept the position and move to Kuwait but also induced Flynn to return to Kuwait after he was briefly terminated and induced his wife to move to Qatar. (Id. at 26).

The misrepresentations allegedly began with International Services' website, which Flynn used to research the CEO position. (Id. at ¶¶ 139, 211). Among other things, International Services' website displayed Health Network's logo next to International Services' name, referenced both Health Network and General Hospital numerous times, and explained that International Services brought Health Network's services to health centers in the Middle East. (Id. at ¶¶ 141-32). These misrepresentations continued during the interview process. For example, Flynn's interviews were conducted at General Hospital with two of International Services' representatives who previously worked for General Hospital. (Id. at ¶¶ 152-54, 158-59).

After Flynn was hired, further meetings were conducted at General Hospital with numerous Health Network and General Hospital representatives. (Id. at ¶¶ 165, 171-73). A presentation in one of these meetings included a discussion on the role of Health Network's physicians at the Kuwait hospital. (Id. at ¶¶ 175-76). Flynn also met with Amr Elrifai,

International Services' owner, and General Hospital's CEO to discuss how General Hospital could support the Kuwait project. (Id. at ¶¶ 180-81). Flynn was also receiving emails from International Services' representatives, who had Health Network email addresses, that indicated Health Network and General Hospital were involved in the Kuwait project. (Id. at ¶ 190). Additionally, Flynn's reimbursement check for his travel expenses to Kuwait stated it was issued by General Hospital, even though the check allegedly did not actually come from General Hospital. (Id. at ¶¶ 203-04).

It was later revealed that while International Services proposed Health Network support the Kuwait project, the two entities did not reach an agreement regarding Health Network's involvement in the project. (Doc. # 50-1 at ¶ 9). Flynn alleges others were also misled by International Services' representations of Health Network's involvement in the Kuwait project. (Doc. # 50 at ¶¶ 129-30). In fact, Health Network's General Counsel wrote a letter to an entity allegedly misled by International Services' representations, stating that Health Network and General Hospital were not affiliated with International Services and that Health Network would demand International Services to stop using their branding. (Doc. # 50-5).

After Flynn left the CEO position, International Services brought this action against Flynn for breach of contract, conversion, and tortious interference with a contract. (Doc. ## 1, 38). In response, Flynn filed a counterclaim against International Services for fraud (Doc. # 40), which this Court dismissed because Flynn failed to allege fraud with particularity in compliance with Federal Rule of Civil Procedure Rule 9(b). (Doc. # 49). Flynn then filed an amended counterclaim for fraud and negligent misrepresentation. (Doc. # 50). On December 28, 2018, International Services filed the instant motion, arguing the amended counterclaim still fails to comply with Rule 9(b). (Doc. # 56). Flynn filed his response on January 11, 2019. (Doc. # 59). The motion is ripe for review.

## II. <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the counterclaim and construes them in the light most favorable to the counterclaim plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the counterclaim plaintiff with all reasonable inferences from the allegations in the counterclaim. <u>Stephens v. Dep't</u>

of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir.

1990). But,

> [w]hile a [counterclaim] attacked by a Rule
> 12(b)(6) motion to dismiss does not need detailed
> factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of
> action will not do. Factual allegations must be
> enough to raise a right to relief above the
> speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)

(citations omitted). Courts are not "bound to accept as true

a legal conclusion couched as a factual allegation." Papasan

v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

consideration to well-pleaded factual allegations, documents

central to or referenced in the counterclaim, and matters

judicially noticed. La Grasta v. First Union Sec., Inc., 358

F.3d 840, 845 (11th Cir. 2004).

## III. **Analysis**

Rule 9(b) requires a party alleging fraud to "state with

particularity the circumstances constituting the fraud,"

although "[m]alice, intent, knowledge, and other conditions

of a person's mind may be alleged generally." Fed. R. Civ. P.

9(b). The heightened pleading standard of Rule 9(b) is

satisfied if the claim sets forth: "(1) precisely what

statements or omissions were made in which documents or oral

representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016).

In other words, "Rule 9(b) demands that [parties] must actually plead the who, what, when, where, and how of specific misrepresentations that led them astray." Lawrie v. Ginn Dev. Co., LLC, 656 F. App'x 464, 474 (11th Cir. 2016). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam). Additionally, "because negligent misrepresentation sounds in fraud, the facts supporting the claim must be [pled] with particularity." Lee Mem. Hosp. Sys. v. Blue Cross & Blue Shield of Fla., Inc., No. 2:16-cv-901-FtM-38MRM, 2017 U.S. Dist. LEXIS 47805, at *52 (M.D. Fla. Feb. 22, 2017).

Flynn's amended counterclaim satisfies the pleading requirements of Rule 9(b). The amended counterclaim alleges the exact documents and misrepresentations made by International Services, as well as the specific time, place,

and persons responsible for these representations. Flynn specifies that International Services' website, among other things, used Health Network and General Hospital's branding and stated International Services brought Health Network's services to health centers in the Middle East. Flynn identifies statements made by International Services' representatives in specific emails, presentations, and meetings regarding Health Network and General Hospital's involvement in the Kuwait project. Flynn also identifies a check bearing General Hospital's name to cover his travel expenses to Kuwait, which Flynn alleges was not actually issued by General Hospital.

Additionally, Flynn alleges how these documents and representations misled him. Before Flynn was hired, International Services' website and use of Health Network's facilities made Flynn believe the entities consistently worked together, including on projects such as the Kuwait hospital. After Flynn was hired, the representations made in emails, presentations, and meetings likewise supported his continued belief that Health Network and General Hospital were affiliated with the Kuwait project. Finally, Flynn specifically alleges that International Services obtained a highly experienced manager to serve as CEO by misrepresenting

7

the Kuwait hospital's support. This is a sufficient allegation of a benefit International Services wrongfully received through its fraud.

International Services argues Flynn failed to allege that it made any representations regarding its affiliation with Health Network and General Hospital before Flynn's hiring that could have induced Flynn to join International Services. (Doc. # 56 at 7-11). But International Services' use of Health Network and General Hospital's branding, which Health Network demanded International Services stop using, and statements of International Services' representation in the Middle East could plausibly lead Flynn to believe these entities were working on the Kuwait project together. The amended counterclaim also alleges International Services' misrepresentations induced Flynn to come back to Kuwait after his termination and induced Flynn's wife to move to Qatar.

International Services also contends that its representations of Health Network and General Hospital's involvement in the Kuwait project were not false. (Id. at 15). The Court accepts the allegations in the amended counterclaim as true. Here, Flynn alleges that Health Network and General Hospital neither assisted nor agreed to assist in the ways International Services had represented. Flynn

bolsters these allegations with multiple exhibits. For example, Elrifai's affidavit states International Services and Health Network did not reach an agreement regarding Health Network's involvement in the Kuwait project. (Doc. # 50-1 at ¶ 9). Also, Health Network's General Counsel wrote a letter stating that Health Network and General Hospital were not affiliated with International Services. (Doc. # 50-5). These allegations and accompanying exhibits plausibly establish that International Services' representations were false. See In re Galectin Therapeutics, 843 F.3d at 1269 ("Rule 9(b) does not abrogate the concept of notice pleading . . . .").

Additionally, International Services contends the negligent misrepresentation claim fails to comply with Rule 9(b) for the same reasons the fraud claim fails. (Doc. # 56 at 17). However, for the same reasons articulated above, Flynn has sufficiently alleged a claim for negligent misrepresentation under Rule 9(b).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED**:

Plaintiff Allegheny International Services (ME), LLC's Motion to Dismiss Flynn's Counterclaim (Doc. # 56) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 25th day of January, 2019.

<br>

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE